HARRY RAMSBOTHAM, RICHARD L. CLARK, JOHN RADI-
GAN AND THOMAS DEL VERDE, PROSECUTORS-AP-
PELLANTS, v. THE BOARD OF PUBLIC WORKS OF THE
CITY OF PATERSON, THE BOARD OF ADJUSTMENT OF
THE CITY OF PATERSON, WILLIAM BYRNES, BUILD-
ING INSPECTOR OF THE CITY OF PATERSON, AND
HAROLD MEYER, DEFENDANTS-RESPONDENTS.

HARRY RAMSBOTHAM, RICHARD L. CLARK. JOHN RADI-
GAN AND THOMAS DEL VERDE, PROSECUTORS-AP-
PELLANTS, v. THE BOARD OF PUBLIC WORKS OF THE
CITY OF PATERSON, THE BOARD OF ADJUSTMENT OF
THE CITY OF PATERSON, WILLIAM BYRNES, BUILD-
ING INSPECTOR OF THE CITY OF PATERSON, AND
BLOSMOR HOLDING COMPANY, A CORPORATION, DE-
FENDANTS-RESPONDENTS.

Argued February 28, 1949—Decided April 25, 1949.

132

*Mr. Edward G. Weiss* (*Mr. Joseph J. DeLuccia,* on the brief) argued the causes for the appellants.

*Mr. Charles Joelson* and *Mr. Benjamin J. Spitz* (*Mr. Charles S. Silberman,* attorney for the respondent Harold Meyer; *Messrs. Spitz & La Cava,* attorneys for the respondent Blosmor Holding Co.; *Mr. John M. B. Ward,* attorney for the other respondents. *Mr. George Surosky,* on the brief) argued the causes for the respondents.

The opinion of the court was delivered by

ACKERSON, J. These appeals are from judgments of the former Supreme Court sustaining, on *certiorari,* resolutions of the Board of Public Works of the City of Paterson approving the recommendations of the local Board of Adjustment for the issuance of permits to the defendant Harold Meyer for a used car lot on his property at Nos. 764-766 Market Street, and to the defendant Blosmor Holding Company for the construction and use of a motor vehicle service station on its premises Nos. 726-730 Market Street in that city. The appeals involve similar questions of law and facts, and having been argued together will now be disposed of in that manner.

The properties are located in a class "B" residential zone where the contemplated uses thereof are prohibited by the applicable zoning ordinance, and the Board of Adjustment, in recommending the variations therefrom, found that unnecessary hardship would result to the applicants from a literal enforcement thereof, which is a statutory prerequisite to the action thus taken. *R. S.* 40:55-39.

After obtaining the writs of *certiorari* to review the aforesaid proceedings, depositions were taken by the prosecutors to supplement the proofs adduced before the local boards. Defendants object *in limine* to the use thereof on the ground that in such cases the reviewing court is limited to the consideration of the evidence presented in the local tribunals.

But it makes no difference in the result we have reached, for, regardless of the depositions, we find no basis in the proofs before the local boards to sustain findings of undue hardship within the meaning of the applicable statute.

The Meyer property has a frontage of 63 feet on Market Street and about 80 feet on East 29th Street. The Blosmor Holding Company property is located two blocks to the west on Market Street and has a frontage thereon of 123 feet and 126.37 feet on East 27th Street. Both properties were acquired by their present owners long after the adoption of the zoning ordinance, and both are in a "B" residential zone which begins at East 29th Street and continues westward on Market Street without interruption, a distance of four blocks to East 25th Street, an area devoted primarily to substantial dwellings. At East 27th Street, Market Street is joined at an angle by Twentieth Avenue which, for a distance of twelve blocks west of this junction, is all in "B" and "C" residential zones.

At the hearings before the local boards there was vigorous opposition to granting the desired variances from numerous property owners in that area. The testimony on behalf of the applying lot owners came principally from two realtors, and considered in its most favorable aspect for said owners, was to the effect that Market Street is a heavily traveled main artery to and from the center of the city; that business has located on this street eastward "up to East 25th Street" and then, after four blocks of residences, commercial occupancy continues "beyond East 29th Street;" that "business should have an opportunity to develop" into the residential area between the last named streets; and that to use the lots in question for residential purposes would not be economically sound. One realtor "thought Market Street will sooner or later be all business." Three letters were produced concerning a lot on the southeast corner of Twentieth Avenue and East 26th Street, indicating that a mortgage loan had been refused on that lot on the ground that the "neighborhood influences do not indicate sufficient stability of this location for continuing residential use."

The picture thus presented is that of a residential oasis surrounded by the pressure of advancing mercantile requirements. But it does not appear that this condition affects the properties of the defendant lot owners differently from, or creates special conditions not applicable to, all of the other lot owners, particularly those owning property on the perimeter of this residential area. The applicable statute permits variances from a zoning ordinance only "in *specific cases* * * * where, owing to *special* conditions, a literal enforcement * * * will result in unnecessary hardship." *R. S.* 40:55–39 (italics supplied). This provision is operative only where the applicant's plight is "owing to special conditions," that is, to circumstances uniquely touching his own land as distinguished from conditions that affect the whole neighborhood. And it is not *per se* a sufficient reason for a variation that the nonconforming use is more profitable to the particular landowner. *Brandon v. Montclair,* 124 *N. J. L.* 135 (*Sup. Ct.* 1940); affirmed, 125 *Id.* 367 (*E. & A.* 1940); *National House and Farms Ass'n, Inc., v. Oakland,* 2 *N. J.* 11 (*Sup. Ct.* 1949); *Potts v. Board of Adjustment of Princeton,* 133 *N. J. L.* 230, 239 (*Sup. Ct.* 1945).

The statutory intent is succinctly stated in *Brandon v. Montclair, supra,* at *p.* 150, as follows: "If the difficulty is common to lands in the vicinity, by reason of arbitrary zoning, and is therefore of general rather than particular application, the remedy lies with the local legislative body [by amending the ordinance] or in the judicial process"—by attacking its validity.

The validity of the zoning ordinance was not challenged below, nor is it an issue here, and unnecessary hardship to the applying landowners, within the meaning of the statute, is not presented by the record before us; such proof is a jurisdictional *sine qua non* to the granting of a valid variance. *Scaduto v. Bloomfield,* 127 *N. J. L.* 1, 3 (*Sup. Ct.* 1941); *Sitgreaves v. Board of Adjustment of Nutley,* 136 *Id.* 21, 26 (*Sup. Ct.* 1947).

While it is true, as stated in the opinion below, that a court "may not substitute its judgment for that of the

[local] board within that body's sphere of action," unless "the action taken * * * is arbitrary, capricious or unreasonable," nevertheless, where, as here, the board bases its action upon an unauthorized standard for determining "unnecessary hardship," it is acting beyond its "sphere of action" and the appellate tribunal should apply the necessary corrective. Otherwise undue hardship may result to the owners of other property in the restricted area.

The amendment of *R. S.* 40:55–39 by *P. L.* 1948, *c.* 305, § 6, *p.* 1223, which became effective August 9, 1948, is not applicable here because the variances in question were granted prior to the effective date of the amendment.

The judgments below are reversed and the grants of the variances vacated.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.